**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**LATONYA R. BROOKS,**                                                                                    **PLAINTIFF**
**SPECIAL ADMINISTRATOR OF**
**THE ESTATE OF BRIAN N. BROOKS**

**v.**                                         **Case No. 4:22-CV-1123-LPR**

**JAMES BEDWELL, et al.**                                                                                 **DEFENDANTS**

**ORDER**

Pending before the Court is, among other things, the City Defendants' Motion to Dismiss.[1] This Order addresses only that Motion. This Order does not address the Motion to Dismiss filed by the State Defendants. That Motion will be decided by way of a separate Order.

The City Defendants' Motion to Dismiss is GRANTED in its entirety. Here's what you need to know to understand why. Plaintiff's Complaint does not allege that any City Defendant participated in or approved the PIT maneuver that resulted in the death of Mr. Brooks. To the contrary, the Complaint specifically alleges that *State Trooper* Ellison made the decision to perform, and actually performed, the PIT maneuver.[2] With respect to the City Defendants, Plaintiff's Complaint alleges only that (1) Officers Terry and Brumley engaged in a high-speed chase after Mr. Brooks had refused to pull over, and (2) Chief Bedwell and Sergeant Wilson failed to appropriately train and supervise Officers Terry and Brumley.[3] Plaintiff's Response to the City Defendants' Motion to Dismiss confirms that Plaintiff's theory of liability with respect to the City Defendants is entirely focused on (or derivative of) the initiation and maintenance of a high-speed

---

[1] Doc. 8.

[2] Doc. 1 at 5.

[3] *Id.* at 2, 4–7.

pursuit by Officers Terry and Brumley.[4]

Given the foregoing, neither Count I nor Count II states a viable cause of action against the City Defendants.[5] Count I asserts a § 1983 claim predicated on a violation of the Fourth Amendment as incorporated against the States by virtue of the Fourteenth Amendment.[6] But the alleged conduct of the City Defendants did not amount to a seizure under the Fourth Amendment because (1) neither they nor their cars ever touched Mr. Brooks or his car, and (2) Mr. Brooks did not submit to their show of authority. Without a seizure, there can be no excessive force, and thus no Fourth Amendment violation.[7] Count II asserts a claim under the Arkansas Civil Rights Act predicated on a violation of the Due Process Clause in Article 2, Section 8 of the Arkansas Constitution.[8] But no allegation against the City Defendants comes anywhere close to the conscience-shocking behavior that is a necessary component of such a claim. Collectively, two of the City Defendants tried to stop a car that they believed committed a traffic violation, pursued the car when it fled at high speeds, and then took a secondary chase position once a State Trooper took over the primary chase position.[9] That's it. That's all they did according to the Complaint. There's no case from the Arkansas courts, the Eighth Circuit, or anywhere else that suggests this course of

---

[4] *See* Doc. 13 at 7, 9. The closest the Complaint comes to alleging something more against a City Defendant is when it states, "Mr. Brooks was telling his cousin on Facetime that he was being rammed during the pursuit." Doc. 1 at 6. But that allegation does not allege that a City Defendant (as opposed to the State Defendant that allegedly performed the PIT maneuver) was doing the ramming. And, as noted above, Plaintiff does not argue otherwise in the Response to the City's Motion to Dismiss.

[5] Doc. 1 at 7–8.

[6] *Id.* at 7.

[7] The Arkansas Constitution has a provision that very nearly mirrors the Fourth Amendment of the federal Constitution. Ark. Const. art. II, § 15. The Complaint does not appear to be making an Arkansas Civil Rights Act claim related to this provision of the Arkansas Constitution. Doc. 1 at 7–8. In any event, such a claim would fail for the same reason that the § 1983 claim fails. The Arkansas Civil Rights Act makes clear that, as a general matter, it is interpreted coextensively with § 1983. Ark. Code Ann. § 16-123-105(c).

[8] Doc. 1 at 7–8.

[9] *Id.* at 4–7.

conduct meets any known conscience-shocking standard.[10]

The Complaint only contains two counts, which the Court has just addressed. However, for the sake of completeness, there is a little more to say. Plaintiff's Complaint includes a few references to Arkansas tort law—specifically the torts of battery and outrage.[11] But the Complaint does not set forth any formal Count related to Arkansas tort law. Accordingly, the Court does not believe Plaintiff has actually made such claims. Even if Plaintiff had properly made such claims, they would not be viable.

Let's start with battery. The statute of limitations on battery claims is one year.[12] According to the Complaint, the date of the car chase was November 19, 2019.[13] Plaintiff did not bring suit until September 2, 2022.[14] As the City Defendants recognize, this is well outside the limitations period.[15]

---

[10] Indeed, just the opposite is true. In police car-chase cases, the Supreme Court of the United States and the Eighth Circuit has made clear (in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), and *Helseth v. Burch*, 258 F.3d 867 (8th Cir. 2001) (en banc)) that a federal substantive due process claim will not succeed unless a plaintiff can show that the chasing officers had an intent to harm unrelated to the legitimate object of the arrest. Nothing in the Complaint makes it plausible that Plaintiff could show any City Defendant had such intent. And, as explained in footnote 7 *supra*, there is a presumption that the Arkansas Supreme Court interprets the Arkansas Constitution's Due Process Clause consistently with its federal analog for purposes of an Arkansas Civil Rights Act claim. Neither party suggests Arkansas uses a lower standard. But, again, even if Arkansas did use a lower standard (such as conscious indifference or deliberate indifference), the allegations in the Complaint do not state a viable substantive due process claim under any known conscience-shocking standard.

Although not repeated in her Response to the City Defendants' Motion to Dismiss, her Response to the State Defendants' Motion to Dismiss suggests Plaintiff may be trying to distinguish prior cases by suggesting the police here were not responding to any crime. *See* Doc. 11 at 8. But the Complaint alleges that Mr. Brooks passed a police officer head-on without dimming his headlights. Doc. 1 at 4. That was (and still is) a violation of Ark. Code Ann. § 27-36-211(1)(A) (West 2019). *See, e.g.*, *Rodriguez v. State*, 2009 Ark. App. 508, at 4–6, 324 S.W.3d 368, 371–72. In any event, Mr. Brooks's refusal to stop for the police and subsequent speeding (also alleged in the Complaint) were (and still are) violations of the law. *See* Ark. Code Ann. § 5-54-125 (West 2019); Ark. Code Ann. § 27-51-201 (West 2019).

[11] Doc. 1 at 1, 3, 8.

[12] Ark. Code Ann. § 16-56-104(2)(A).

[13] Doc. 1 at 4.

[14] The instant suit was filed November 18, 2022. Doc. 1 at 1. A prior suit concerning this same incident was filed on September 2, 2022. *See* Doc. 1 at 1, *Brooks v. Bedwell, et al.*, No. 4:22-CV-00798-LPR (E.D. Ark.). That case was voluntarily dismissed. *See* Doc. 20, *Brooks v. Bedwell, et al.*, No. 4:22-CV-00798-LPR (E.D. Ark.).

[15] Doc. 9 at 22. Plaintiff did not discuss the statute of limitations issue in the Response to the City Defendants' Motion.

Moving on to the tort of outrage, no allegation against the City Defendants comes anywhere close to describing conduct that is extreme, outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.[16] As noted above, collectively two of the City Defendants tried to stop a car that they believed committed a traffic violation, pursued the car when it fled at high speeds, and then took a secondary chase position once a State Trooper took over the primary chase position.[17] Regardless of whether the initiation or continuation of a high-speed chase might have been a violation of internal police policy or failed to conform to nationwide police car-chase best practices, the conduct falls far short of the type of conduct that the tort of outrage addresses.

In conclusion, even taking the allegations in the Complaint as true and drawing all reasonable inferences from those facts in favor of the Plaintiff, Officers Terry and Brumley committed no violation of the federal or state constitutions (and no actionable torts). And because any claims against Chief Bedwell and Sergeant Wilson would have to be derivative of the conduct of Officers Terry and Brumley—either failure to train/supervise or respondeat superior—no viable causes of action have been stated against any of the four City Defendants. Accordingly, the City Defendants' Motion to Dismiss is GRANTED in its entirety.[18] The City Defendants are dismissed from this case. Nothing in this Order, however, should be taken as addressing claims against the State Defendants. Those claims will be resolved shortly by way of a separate Order.

IT IS SO ORDERED this 3rd day of August 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[16] *See Crockett v. Essex*, 341 Ark. 558, 563, 19 S.W.3d 585, 589 (2000).

[17] Doc. 1 at 4–7.

[18] Doc. 8.